STATE

v.

**Lindsay WILLIAMS.**

No. 94–10–C.A.

Supreme Court of Rhode Island.

April 11, 1995.

Jeffrey Pine, Atty. Gen., Jane McSoley, Sp. Asst. Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by the defendant, Lindsay Williams (Williams or defendant), from a judgment of conviction of possession of controlled substances with intent to deliver in violation of G.L.1956 (1982 Reenactment) § 21–28–4.01(A)(2)(a), as amended by P.L.1988, ch. 521, § 1. A jury found Williams guilty of one count of possession of marijuana with intent to deliver and one count of possession of cocaine with intent to deliver. The defendant was sentenced to a term of ten years to serve for the marijuana charge and to a term of thirty years, twenty to serve and ten suspended, for the cocaine charge. Both sentences were to be served concurrently. We affirm the judgment of the Superior Court. The facts of the case insofar as pertinent to this appeal are as follows.

During the month of September 1988, Williams was the focus of an investigation conducted by detectives from the Special Investigations Bureau of the Providence police department. Detective Frank Zammarelli (Zammarelli) testified that part of the investigation included the surveillance of a house located at 24 French Street in Providence. On several occasions Zammarelli observed defendant enter the premises at that location anytime between four o'clock in the afternoon and two in the morning. The nights that defendant entered the house late in the evening, the house was in almost complete darkness except for possibly one light. Zam-

marelli testified that on those evenings he observed defendant entering the house; he then saw several lights go on. After a short period all the lights in the house would be turned off. Zammarelli testified that he maintained his surveillance position for thirty to forty-five minutes after the lights were extinguished and saw no one leave the house.

As a result of this investigation and evidence from other sources Zammarelli and Detective Nicholas Cardarelli (Cardarelli), also of the Special Investigations Bureau, obtained a search warrant authorizing a search of 24 French Street for cocaine, crack cocaine, narcotics paraphernalia, and money derived from the illegal sales of narcotics. The issuance of the search warrant is not questioned. The warrant was executed on September 30, 1988, by Zammarelli, Cardarelli, and several other members of the Special Investigations Bureau. The defendant was not at home when the warrant was executed.

Pursuant to the warrant, the detectives confiscated six plastic bags filled with suspected marijuana, twelve vials and two plastic bags filled with suspected crack cocaine, four plastic bags containing suspected cocaine residue, and a jar containing suspected cooked crack cocaine. The detectives' suspicions were subsequently confirmed when the seized contraband tested positive for marijuana and cocaine.

In addition to the drugs, detectives confiscated materials and instruments commonly used to produce illegal narcotics. Detectives found and confiscated a plastic bag filled with empty vials; a package of steel wool; a bottle of ginseng capsules, which is a common cutting agent for cocaine; eleven white surgical masks; and a triple-beam scale. At trial Cardarelli testified that these items are commonly found during drug raids and during the execution of search warrants in narcotics cases.

During the search detectives also seized letters, bills, paperwork, and assorted mail all addressed to Williams at 24 French Street, Providence. In addition, a set of keys was found on the kitchen table. It was not established at trial, however, that the keys fit the locks on the house. One of the keys had a General Motors insignia whereas defendant drove a 1986 Mercury Cougar.

Shortly after the detectives had finished searching the house, defendant arrived at 24 French Street and parked in front of the house. Zammarelli arrested defendant as he approached the front door of the house and transported him to police headquarters in defendant's car. Pursuant to an inventory search of defendant and his car, Zammarelli seized $1,497 in cash from defendant's trousers pocket.

The defendant bases his appeal on two issues. First, defendant argues that the trial justice erred at the close of the state's evidence by denying his motion for judgment of acquittal on the charge of intent to deliver marijuana. He claims the state failed to sustain its burden of persuasion or proof on that charge. Second, defendant argues that he was entitled to a mistrial because the prosecutor, during his closing argument, commented on defendant's failure to present evidence. We do not agree with defendant's assertions. We affirm the judgment of the Superior Court for the following reasons.

When considering a motion for judgment of acquittal, the trial justice is required to "view the evidence in the light most favorable to the state and must draw all reasonable inferences that are consistent with the guilt of the accused." *State v. Lamoureux*, 573 A.2d 1176, 1181 (R.I.1990); *State v. Henshaw*, 557 A.2d 1204, 1206 (R.I.1989). In passing upon such a motion, the trial justice may not consider the weight of the evidence or the credibility of witnesses. *Lamoureux*, 573 A.2d at 1181 (citing *State v. Moosey*, 504 A.2d 1001, 1006 (R.I.1986)). Unless the evidence viewed in this favorable light is insufficient to support a finding of guilt beyond a reasonable doubt, the motion must be denied. *State v. Mattatall*, 603 A.2d 1098, 1105 (R.I.1992); *Henshaw*, 557 A.2d at 1206–07.

When reviewing the denial of a motion for judgment of acquittal, this court must apply the same standard as the trial court. *Id.* at 1206. In order to obtain review of the denial of the motion, a defendant must have made a motion for judgment of

acquittal at the close of the state's evidence and rest without presenting any evidence. If, however, the defendant does present evidence, the motion for judgment of acquittal must be renewed at the close of all the evidence in order to preserve the right of appeal. *State v. Clark*, 576 A.2d 1202, 1206 (R.I.1990); *State v. Colbert*, 549 A.2d 1021, 1023 (R.I.1988) (citing *State v. Grullon*, 117 R.I. 682, 689, 371 A.2d 265, 268 (1977)). In the instant case defendant presented evidence after his first motion for judgment of acquittal was denied. He did, however, renew his motion at the close of all the evidence, thus preserving his right to appeal.

On appeal, defendant maintains that his motion for judgment of acquittal should have been granted in regard to the charge of possession with intent to deliver marijuana.[1] He claims that since the state's evidence focused almost exclusively on defendant's intent to deliver cocaine, not marijuana, the state did not satisfy its burden of proof on the marijuana charge. Furthermore, defendant claims that the mere possession of one and one-half pounds of marijuana,[2] absent additional evidence, is insufficient to support a finding of guilt for intent to deliver. At the very least, defendant argues, he should be resentenced for simple possession of marijuana.

■ In order to prove possession of marijuana with intent to deliver, the state must show that a defendant was in possession of drugs, had the requisite control over them, and intended to deliver the drugs to others. *See Colbert*, 549 A.2d at 1023–24. In the instant case, there was sufficient evidence to find that defendant was living at 24 French Street in Providence when the police executed the search warrant. Since the police obtained and executed a search warrant for illegal narcotics and subsequently found the marijuana in defendant's house, the evidence clearly supports a finding that defendant possessed and had control over the marijuana. *See id.* As far as the third element, intent to deliver, is concerned, this court has held that a factfinder can infer an intent to deliver illegal narcotics solely on the basis of

the amount of the drugs found. *Id.* at 1024–25.

In *Colbert* a barrel filled with 19.44 pounds of marijuana was sent by air freight to the defendant from an individual in Jamaica. *Id.* at 1022–23. When the defendant claimed the barrel at T.F. Green Airport in Warwick, he was arrested and charged with possession of marijuana with intent to deliver. *Id.* at 1023. At the defendant's trial, the state offered testimony to show that 19.44 pounds of marijuana was enough to make 12,441 "joints" (marijuana cigarettes) and argued that the jury could therefore infer that the defendant possessed the requisite intent to deliver. We affirmed the defendant's conviction in that case, holding that any inference that 19.44 pounds of marijuana were for the defendant's personal consumption was totally unreasonable. *Id.* at 1025 n. 2.

■ In the instant case defendant possessed less than two pounds of marijuana, a much smaller amount than that possessed in *Colbert*. Although one and two-thirds pounds is a substantial amount of marijuana, possession of that amount in and of itself would be insufficient to prove defendant's intent to deliver it to others. The jury, however, need not consider that evidence (the quantity of drugs) in isolation. *See State v. Eiseman*, 461 A.2d 369 (R.I.1983).

In *Eiseman*, we held that the mere possession of 34.5 grams of 75-percent–pure cocaine, loosely packaged, absent additional evidence, was insufficient to support a conviction of possession of a controlled substance with the intent to deliver. *Id.* at 381–82. At trial the state failed to offer any evidence that would prove the defendant's intent to deliver the cocaine rather than his mere possession of a quantity consistent with personal use. *Id.* at 382. In the instant case, however, the state offered considerable evidence from which the jury could infer defendant's intent to deliver the marijuana.

■ Among the items seized in defendant's house were a triple-beam scale, eleven hospital masks, ginseng capsules, steel-wool

---

1. The defendant has not appealed his conviction of possession of cocaine with intent to deliver.

2. The actual weight of the marijuana seized was 754.4 grams, about one and two-thirds pounds.

pads, and a bag filled with empty plastic vials. Cardarelli testified at trial that all these items are commonly found during drug raids and when executing search warrants in narcotics cases. It is of no compelling consequence that most of the drug paraphernalia seized at defendant's home pertained to the production of crack cocaine rather than marijuana. Evidence that tends to show a defendant's involvement in the probable sale of one type of illegal narcotic would give rise to an inference of an intent to sell all the drugs found in the defendant's possession, if such a determination is reasonable. In addition, the triple-beam scale the state admitted into evidence could certainly be used to weigh both cocaine and marijuana.

■■■ Moreover, the marijuana was found packaged in six separate plastic bags. This court has held that separate packaging of illegal narcotics may be indicative of an intent to deliver. *Eiseman,* 461 A.2d at 382 (citing *State v. Reis,* 430 A.2d 749 (R.I.1981)). Although in *Reis* the illegal narcotics were found separated and packaged in equal amounts and the marijuana found at 24 French Street was separated and packaged in unequal amounts, the reasoning in *Reis* is applicable to the instant case. When we consider the totality of circumstances, ample evidence existed for the jury to have found that defendant intended to deliver the marijuana. The trial justice therefore properly denied defendant's motion for judgment of acquittal.

The defendant next contends that he is entitled to a new trial because of certain prejudicial remarks made by the prosecutor during his closing argument. The defendant maintains that the prosecutor impermissibly commented on defendant's failure to present evidence. Some additional facts are necessary to clarify defendant's position.

After defendant's first motion for judgment of acquittal was denied, he proceeded to present evidence. Defense counsel introduced testimony regarding a District Court complaint for narcotics trafficking, which was issued four weeks prior to the incident at issue to an individual unrelated to these proceedings. The significance of that complaint, defendant argued, was that the address of the individual named in the complaint was listed as 24 French Street, Providence. The defendant also introduced a photocopy of a portion of a certified death certificate of a different individual who had apparently committed suicide, whose last known residence was 24 French Street, Providence. The purpose for which defendant offered these documents was to try to show that these two individuals (the man named in the complaint and the man who had committed suicide) had also lived at 24 French Street with defendant.

In relation to the evidence defendant presented at trial, the prosecutor made the following remarks in his closing argument. (We have supplied the emphasis to particular comments at issue.)

"Ladies and Gentlemen of the Jury, [defense counsel] presented [one] witness[ ] * * * the Clerk of the District Court, Second Division District Court. And he had some complaint and somebody's name on it with an address of 24 French Street. Do we know anything about this case? No. Do we know if some vagrant used the address 24 French Street? Do we know anything about this complaint other than some guy possibly used the address of 24 French Street on a District Court complaint, a month earlier. That's all we know about that. What does that mean? Nothing. You don't think there are people who go over to the District Court on a daily basis and give fake addresses? Maybe he lives two doors down. Maybe he lives a couple of streets over. Maybe he visited 24 French Street. Who knows? *We can openly speculate.*

"And then there was a death certificate, a death certificate of somebody, somewhere, and on it was the address of 24 French Street as a residence. *I don't know what significance this has, if any. [Defense counsel] wants to rest his defense on it.* Somehow the M.E.'s office came up with 24 French Street as an address of some poor dead man, I don't know what significance this has in the case. *I bet if we went out there and searched vital statistics,* motor vehicle records, we could probably find 20 other people who used the

address of 24 French Street. [The District Court Clerk's] testimony certainly was unbiased. He wasn't testifying to anything— yeah, I brought over a case and some poor guy used the address of 24 French Street. Of course he had no bias or prejudice. The evidence has no influence whatsoever on this case. None. None."

The defendant maintains that the prosecutor improperly commented on the lack of evidence presented by defendant, "thereby raising the obvious implication that the accused should have supplied additional or better evidence on his own behalf." The defendant further argues that the prosecutor's "empty chair" remarks were so prejudicial that the trial justice should have either passed the case or given an immediate cautionary instruction.[3]

Contrary to the defendant's assertions, the prosecutor, during his closing argument, merely made reference to the quality of the defendant's evidence. He did not comment on the defendant's failure to offer sufficient evidence. Certainly if the prosecutor had stated or even implied that the defendant was required to offer evidence in his own defense, the defendant's argument would be persuasive. *See State v. Taylor*, 425 A.2d 1231, 1234 (R.I.1981); *State v. Jefferson*, 116 R.I. 124, 136, 139, 353 A.2d 190, 197, 199 (1976). In the instant case, however, the prosecutor's remarks were not improper and the trial justice was correct in not passing the case and in not giving an immediate cautionary instruction.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.

---

**3.** In response to defendant's request either to pass the case or to give an immediate cautionary instruction, the trial justice cited two reasons for denying the request. One reason was that the comments were not improper. The second reason was that defendant's request was not timely.

Both parties on appeal have stipulated that defendant's request, which was made immediately following the prosecutor's closing argument, was timely. For purposes of this appeal we have treated defendant's request as timely.